Next and final case for argument, United States v. Moy Hernandez. Yes, ma'am. Okay. All right, Mr. Fields, whenever you're ready. Yes. Good morning. My name is Daryl Fields and I represent Jose Moy Hernandez. The district court abused its discretion in denying Mr. Hernandez's motion for a reductionist crack cocaine sentence under the First Step Act. In particular, the district court gave great weight to its generalized view about the particular societal harms caused by crack cocaine dealers. The court actually said that this factor weighs heavily against a sentence reduction in this case. Your position isn't that that can't be considered at all, is it? I mean, why is that inappropriate in sort of the tumble of all the things that the court is looking at in deciding sentencing? You're not arguing that that's inappropriate, are you? No, no. Well, a court can consider it and a court can take all kinds of matters into account. A court can even express its opinion about it. But the court here used this as a factor weighing against Mr. Hernandez's motion for relief under this remedial statute. And not only was it a factor, it is, it may seem more like, but the judge says it weighs heavily against Mr. Moy Hernandez. What he's talking about, this is at the page 118 of the appendix, page 9 of the court's opinion. And what he's talking about is his generalized view about the terrible harms crack cocaine traffickers is a class cause, and about the firearms offense, the 922G offense that Mr. Moy Hernandez is convicted of. Those are the things it says weigh heavily against him. On the other 53A factors, the court just says either that they just weigh against him or they don't support a reduction in sentence. But the court is using this general statement, this generalized view, and giving it great weight. And this generalized view is at odds with Congress's intention in passing this remedial statute. The statute is about crack traffickers, crack cocaine traffickers. It has nothing to do with people who deal heroin. It gives no relief to people who deal powder cocaine. Congress looked at the sentences that were imposed on people before 2010 for crack cocaine use and decided they were too harsh. And there was also a racial discrimination component, or at least the perception of that. And Congress wanted to correct the problem of too harsh sentences for crack cocaine offenders. Counsel, as I understand the history of this case and how it went up to the Supreme Court and then back down and remanded back to the district court, I think what would be helpful for me to understand is how did Judge Preska get it wrong now the second or third time when it was remanded for the hearing? What was in exercising and applying the factors in the analysis, what was wrong? That, I think focusing on that would be helpful because I don't think there's a dispute about sort of the history of the discrepancies and the types of drugs and what led us to these types of motions. What she got wrong, first of all, in particular is what I just pointed out. Judge Preska is using as a factor that weighs heavily against Mr. Muir-Hernandez getting relief something that is about the class of offenders, crack cocaine offenders. It's not specific about him. It's untethered to anything specific about Muir-Hernandez's conviction, about his offense, or about anything about him. This is 89 of the judge's opinion. And like I say, she says, the judge says that this weighs heavily against him getting any relief. This thing that has nothing to do with him in particular. The other factors that the court weighs, the court just says they either weigh against him or they don't support relief. But the court itself is saying it's using this generalized view about the particular evil of the class of people who sell crack cocaine and says this weighs heavily against them. When Congress, these are the very people Congress sought to give relief to them, to their families, and for society generally, just to correct the perception of this racial discrimination with crack cocaine. But the judge is taking this very generalized view that is contrary to Congress's intention. But does it rise to the level of an abuse of discretion? Because that's, I guess, the precise question that we have to look at. Yes. It does rise to that level. Because in the context of a remedial statute, to give this the greatest weight, something like your own generalized view about crack cocaine offenders is an error in the context, is a legal error. And legal errors are part of the abuse of discretion analysis. That's an error in the remedial statute. But if she believed this, was she barred from saying it? No, she wasn't barred from saying it. But the court makes clear that the court is not just expressing an opinion. That would be perfectly fine. The court is not talking about its own experience over 20 or so years as a district judge. That would be fine, too. But what the court is saying is that it's weighing this general view against Marilyn Hernandez. But this is an argument against anybody who applies for release under the First Step Act. Or I should say, anybody who's eligible. This argument, I mean, this factor that she is weighing heavily against Ms. Marilyn Hernandez applies to all crack offenders. And that's got to be inconsistent with Congress's purpose. And that's a legal error in this sort of analysis. Congress wanted crack cocaine offenders to get a second look, wanted individualized, each case getting individualized attention. And the judge has discretion, enormous discretion. But to take a view that's very general, untethered to anything specific about a particular case, particular defendant, and to use that as a reason to deny relief is a legal error. And Marilyn Hernandez, his original judge, who knew more about the case than anybody, weighed factors, thought that a 25-year sentence was appropriate for his offense. And for the time, the minimum sentence the judge in the case could impose was 30 years imprisonment. And that's what he imposed back in 2000. And he was aware of all the things that the district court mentions, the fact that he absconded in the 1990s, the fact that he was a settlement possession offender. But the judge, in case he knew all that, he set up the trial. He actually saw Mr. Marilyn Hernandez, saw him at least every day at the trial with federal arraignments, and saw him at sentencing. He was in the best position. He weighed all these factors. And 25 years, he viewed as the appropriate sentence. And it's the appropriate sentence now. And that's what we had asked for. And that's still what we asked for. He served over 25 years, a little over, not 30. And once he's released, he's going to be deported. He was 35 when he committed this offense in 1996. He turned 60 this week. So the just thing would have been for the judge to grant his motion and allow him to be released from prison. And to not do so was an abuse of discretion. All right. Thank you. You've got some rebuttal. We'll hear from Ms. Delfiner. Delfiner, Your Honor. Delfiner. Okay. Good morning, and may it please the Court. Rebecca Delfiner for the United States on Appeal. So neither of the appellant's arguments here have merit. On the legal error point that my colleague was just discussing, it just mischaracterizes the judge's opinion. And on the abuse of discretion point, what we have here is mere disagreement with how the district court weighed the 3553A factors. It simply does not rise to the level of an abuse of discretion. Briefly, on the legal error point, the district court said absolutely nothing about crack cocaine in particular. She did not say especially crack cocaine. She did not say particularly crack cocaine. She didn't say anything about crack cocaine users as a class. Wait a minute. At A117 of the record, she says in New York and throughout the country, crack cocaine trafficking has resulted in shattered families, lifelong addiction, and countless needless fatalities. Quite right, Your Honor. But she didn't say crack cocaine is worse than powder cocaine. First of all, I should highlight one section of a much larger analysis, and that section focused only on general detractors. You said she didn't talk about crack cocaine. I think that's what you said, and she does talk about crack cocaine. Apologies. If I said that, I'm sorry. I mean, it's a fair reading of this as far as I can tell. Correct me if I'm wrong. She is, in the context of her general comments about narcotics traffickers, pointing to crack dealers. Quite right, Your Honor, and I didn't mean to suggest otherwise. The language in the appellant's brief, however, suggests that the district court said that crack cocaine is especially serious and particularly serious, and I believe it was a special evil, and that's what she doesn't say. That's what? She doesn't say any of that. She says that, as Your Honor quoted quite right, in New York and throughout the country, crack cocaine trafficking has resulted in shattered families, lifelong addiction, and countless needless fatalities. In the section, as Your Honor pointed out, talking about the evils of narcotics trafficking generally, and at the conclusion of that general deterrence section focused on just one of the 3553A factors, she says the seriousness, and I'm not quoting directly, of both narcotics and firearms trafficking require a substantial sentence of imprisonment here. So I just simply disagree with the appellant's characterization that Judge Preska said something that goes against the conceitedly remedial purpose of the Fair Sentencing Act and the First Step Act. And then the other point I would make on legal error is just that this was, I don't disagree with the appellant's quoting that this weighs heavily, but this was one of, I think, eight or nine different factors that were considered, and the judge went through all of them and found that Mr. Moy Hernandez specifically did not, she would not exercise her discretion to reduce his sentence here, and that was based on not only this general deterrence point, but I think she said individually and altogether these factors do not make her want to exercise her discretion. And that is, I think, largely based on the underlying facts, as I think this court previously held when it considered the motion the first time around. We have someone who sold a stolen gun, dealt 90 grams of crack cocaine to an undercover, admitted to being part of a group that dealt as much as 30 kilograms of cocaine a week, someone who absconded while on bail, and then he didn't turn himself in when he was arrested for domestic violence, he was brought back to this court. He has a lengthy criminal history. He has a number of substantiated infractions in prison, and as both this court and the district court have highlighted, his guidelines today are exactly the same as they were at the time. Unless the court has other questions, the government will rest on its submission. He served how much time in jail? I believe it's about 25 years at this point, Your Honor. A little over, probably. And so do we – is there – are we entitled to speculate? Is that enough? Certainly, Your Honor, although I would respectfully suggest that's – You don't think it's enough? You think 25 years isn't enough? I think that that's not the question before the court. That's the question I ask you. I – you know, having spent a great deal of time with this record, Your Honor, I tend to agree with Judge Preska that there's not a reason here. All right. Thank you. Thank you. Thank you, Your Honor. I turn again to the court's – to the district court's judgment on pages 89. Page 89, the judge says it is weighing this view it has heavily. It weighs heavily against a sentence reduction. None of the other 3553A factors the court talks about weigh heavily. They just weigh – she just – they weigh against. The judge – the court itself is saying that it is giving the exceptional weight to this general view, this generalized negative view of crack cocaine offenders. And it is a negative view of crack cocaine offenders. She says narcotics traffickers – she's talking about generally. They cause terrible harm in the community for no other reason than for greed and personal profit. And then she narrows it to the most terrible of them, which are crack cocaine offenders. Counsel, just a quick question of clarification.  Does your client have a release date? Yes, he has a release date of May or June next year. Of next year. And he'll – yes. So he's got six months left of his sentence? Yes, he has six months left of his sentence, and he'll be deported to the Dominican Republic. Six months left. I thought I read – I thought I read the release date was May of next year, but I wasn't sure. I just – Yes, the release date – it's in the briefs. It's in the spring. It may sound right. Sorry. It doesn't – Thank you. Sorry. No, it's very, very fine. You're right. But – and Congress – these are the people. These are the people that Congress wanted to help. But Congress also said 404C of the First Step Act says nothing in this section shall be construed to require or to reduce any sentence pursuant to this section. Yes, Your Honor. What do you make of that? I mean, is that imposing kind of an extra layer of deference on us? I thought that was kind of a peculiar measure. It's a little – it's a little deference. That Congress had passed this law in certain terms. Yes, but it didn't mean that you could just have this general view against the very class of people that wanted to help. I took that to mean individualized sentencing. It wanted these people to get a second look, and it wanted them to be looked at individually. I think that's what the Supreme Court in Concepcion made clear. It's not that you can walk in a judge with a disagreement with the law. And that is what this expresses, this general – this generalized view, untethered to anything about this case, about this person. This is generalized view about the evils of crack. You – that – a court cannot do that. A court can disagree with the sentencing guidelines because they are advisory. But a statute, a remedial statute, you can't disagree with the purposes Congress had in enacting it. And the court – it's error for a court not to give sufficient attention to the purpose of the statute. The purpose is to help people like Mr. Hernandez. He was in the heartland of people that Congress intended to help because his offense, other than the felony possession, is the crack cocaine offense. He's not charged with a conspiracy to sell heroin, powder cocaine, and crack. This is just a crack offense. He's a minority person. And he was sentenced back in 2000 at a time when the judge who presided at trial, who knew more about the case, and he was not known as a softy when Judge Macias thought, yeah, made clear that he believed the appropriate sentence was 25 years imprisonment, not the 30 that he had to give. So for all these reasons, we argue it was an abuse of discretion for the district court to deny Mr. Boynton Hernandez's motion for relief in the first event. Thank you, Your Honor. Thank you, counsel. Thank you. Thank you both. We will take this case under advisement. That concludes our cases scheduled for argument. We have two cases on submission.